**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raymond William CURLY,**
**Defendant–Appellant.**

No. 97–6522.

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 19, 1999.

Decided Feb. 11, 1999.

317

CONTIE, Circuit Judge.

Defendant-appellant Raymond William Curly ("Curly") appeals the district court's decision to increase his offense level pursuant to U.S.S.G. § 3A1.1(b), the sentencing guidelines' vulnerable victim enhancement. We affirm the district court's imposition of the vulnerable victim enhancement for the following reasons.

I.

On October 3, 1996, the grand jury for the Western District of Tennessee returned a fifty-two count indictment charging Curly (a.k.a. Roy Drew) with: mail fraud (in violation of 18 U.S.C. § 1341); using a false, fictitious or assumed name for the purpose of committing mail fraud (in violation of 18 U.S.C. § 1342); wire fraud (in violation of 18 U.S.C. § 1343); and conspiracy to commit an offense against the United States (in violation of 18 U.S.C. § 371).[1] In the indictment, the United States repeatedly noted that it was seeking an enhanced penalty pursuant to 18 U.S.C. § 2326, which provides for lengthy terms of imprisonment for persons convicted under sections 1341, 1342 and 1343 "in connection with the conduct of telemarketing," 18 U.S.C. § 2326, that "victimized ten or more persons over the age of 55[or] targeted persons over the age of 55." *Id.*

Curly and Baker formed Memphis Music Corporation on or about December 5, 1990. Curly "was an officer, director, beneficial owner and true party in interest of Memphis Music Corporation." Indictment at 2. In that capacity, Curly "had responsibility for the direction, control, and management of said entity, including its sale of 'investments' in various ventures, including, but not limited to, stock offerings, franchise opportunities, and musical concert promotions to the public." *Id.* According to the indictment, the conspirators sought to induce individuals to invest large sums of money in bogus investments related to the music industry:

5. It was a principle object of the conspiracy that the defendants would, by means of

Michael J. Stengel (briefed), Memphis, Tennessee, for Appellant.

Dan L. Newsom (briefed), Office of the U.S. Attorney, Memphis, Tennessee, for Appellee.

Before: MARTIN, Chief Judge; CONTIE, Circuit Judge; ALDRICH, District Judge.*

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The indictment also named Kenneth Stanley Baker ("Baker") and Memphis Music Corporation as defendants.

various false and fraudulent pretenses, representations, and promises, induce numerous individuals to each invest large sums of money in what were purported to be "investments" in various ventures, including, but not limited to, stock offerings, franchise opportunities, and musical concert promotions, thereby unlawfully enriching themselves.

6. It was a principle object of the conspiracy that the defendants would solicit, and direct the solicitation and acceptance of, orders and money from investors throughout the United States, in a scheme and artifice to promote the sale and execution of "investments" in various ventures, including, but not limited to, stock offerings, franchise opportunities, and musical concert promotions.

7. It was a principle object and purpose of the conspiracy to carry out and to execute the above-listed objects of the conspiracy for the ultimate personal gain, benefit, profit, advantage, and accommodation of the defendants.

Indictment at 4.

On February 5, 1997, Curly was arraigned and entered not guilty pleas to all fifty-two counts in the indictment. On August 8, 1997, Curly changed his plea. Specifically, Curly pled guilty to all fifty-two counts of the indictment in exchange for the United States' promise that it would not seek an enhanced penalty under 18 U.S.C. § 2326. Though the United States agreed to an acceptance of responsibility reduction if Curly continued to cooperate with the government's investigation and prosecution, the United States reserved its right to recommend that Curly be sentenced at the high end of the sentencing guideline range.

On or about October 22, 1997, Curly's Presentence Investigation Report was filed in district court. In it, the probation officer recommended a 70–87 month term of imprisonment (adjusted offense level 20; criminal history category VI) and a two to three year term of supervised release. The probation officer also suggested that Curly make restitution to the victims of his crimes.

On November 10, 1997, Curly filed his objections to the Presentence Investigation Report. Specifically, Curly objected to the two-level vulnerable victim enhancement under U.S.S.G. § 3A1.1(b). The probation officer rejected Curly's objections.

On November 14, 1997, the district court sentenced Curly to concurrent 60–month terms of imprisonment (Counts 1 through 26), and concurrent 27–month terms of imprisonment (Counts 27 through 52), the concurrent terms to run consecutively. Accordingly, the district court sentenced Curly to 87 months' imprisonment, to be followed by a three-year term of supervised release, and ordered Curly to pay restitution in the amount of $1,121,811.80. Curly thereafter filed his timely notice of appeal. On appeal, Curly challenges the applicability of U.S.S.G. § 3A1.1(b)'s vulnerable victim enhancement.

## II.

### Standard of Review

"This court applies a clearly erroneous standard of review to the district court's factual findings, and, while giving due deference to the district court's application of the guidelines to those facts, it renders *de novo* review of the district court's legal conclusions." *United States v. Smith,* 39 F.3d 119, 122 (6th Cir.1994).

### The Applicability of U.S.S.G. § 3A1.1(b) to Curly's Criminal Conduct

■ On appeal, Curly asserts that the district court should have required the prosecution to establish that he *intentionally selected or targeted victims* due to an unusual vulnerability that he knew or should have known about. In response, the United States asserts that the district court properly applied the vulnerable victim enhancement provision simply by requiring proof that Curly knew or should have known of the victims' vulnerabilities.

Section 3A1.1(b) (as amended November 1, 1995) provides: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels."

United States Sentencing Commission, *Guidelines Manual*, § 3A1.1(b) (Nov.1997).[2] Prior to November 1, 1995, the commentary following section 3A1.1 provided:

> This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.

U.S.S.G. § 3A1.1, comment. (n.1) (Nov.1994).

In an effort to resolve the inconsistent application of section 3A1.1(b), the United States Sentencing Commission deleted the "targeting" language from the commentary following section 3A1.1 on November 1, 1995. The revised commentary states that the vulnerable victim provision "applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability." U.S.S.G. § 3A1.1, comment. (n.2) (Nov.1995). Accordingly, most courts eliminated the "targeting" element for sentencing enhancement purposes and simply require that the defendant knew of the victims' vulnerabilities. *See, e.g., United States v. Burgos,* 137 F.3d 841, 843 (5th Cir.1998) (the applicability of section 3A1.1(b)'s vulnerable victim enhancement does not require proof of "targeting"), *cert. denied,* 119 S.Ct. 833 (1999). Because section 3A1.1 no longer requires proof of "targeting" in light of the November 1, 1995 amendments to the sentencing guidelines, this court's 1994 decision requiring proof of "targeting" is no longer good law. *See United States v. Smith,* 39 F.3d at 124 ("We think that those courts that apply the victim vulnerability provision when evidence shows that the defendant targeted his victims because of an unusual vulnerability have captured the intended meaning of the guidelines.").

In this action, United States Postal Inspector Gregory Caouette testified that 22 of Curly's 24 victims were individuals in their late 70s and early 80s.[3] Because many of the victims in this action made multiple investments with Curly over a period of years, Curly's claim that he did not know his victims' ages and vulnerabilities is suspect.[4] Indeed, Curly's coconspirator, Kenneth Baker, previously victimized one of the elderly investors in an earlier fraudulent telemarketing scheme. By passing 18 U.S.C. § 2326, Congress recognized that older individuals are particularly susceptible to fraudulent telemarketing investment schemes like the one committed in this action by Raymond Curly.[5]

The district court rejected Curly's arguments and imposed the vulnerable victim enhancement because of the victims' ages and vulnerabilities, and Curly's repeated efforts

---

2. Interestingly, the 1998 United States Sentencing Guidelines reveal that section 3A1.1(b) was recently changed by Amendment 587. Section 3A1.1(b) now provides:
   (1) If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels.
   (2) If ... the offense involved a large number of vulnerable victims, increase the offense level determined under subdivision (1) by 2 additional levels.
   United States Sentencing Commission, *Guidelines Manual*, § 3A1.1(b) (Nov.1998).

3. The two remaining victims were 47 and 66 years old.

4. For example, one of Curly's victims, Louis Heintz, told Curly that he was forced to take early retirement in 1987, that his wife had Al- zheimer's Disease, and that he had very little money to invest. Curly nevertheless persuaded Heintz to invest his life savings in the bogus investment scheme.

5. Curly, in fact, pled guilty to the first count of the indictment which included the following paragraph that belies Curly's claim that his criminal conduct did not prey upon the elderly: "It was a further part of the scheme to defraud that the defendants would utilize sales techniques and representations through various means ... *designed to induce unwary members of the public who, in most instances, were elderly with little or no experience in the investment offerings being brokered,* to hastily invest in the opportunities presented." Indictment at 6 (emphasis added).

to compel the victims to invest their life savings in his bogus investment scheme. Because the district court properly imposed section 3A1.1(b)'s vulnerable victim enhancement provision, we reject Curly's assignment of error.

Accordingly, we **AFFIRM** the district court's sentencing determinations.