**UNITED STATES of America**
**Plaintiff–Appellee,**

v.

**James M. COGLEY Defendant–**
**Appellant.**

**No. 00–4031.**

United States Court of Appeals,
Sixth Circuit.

March 27, 2002.

Before MOORE, COLE, and FARRIS,* Circuit Judges.

## OPINION

PER CURIAM.

This is an appeal from sentence in a mail fraud case. Defendant–Appellant James M. Cogley pleaded guilty to one count of mail fraud, a violation of 18 U.S.C. § 1341 and § 2, and was sentenced to fifty-seven months incarceration. Cogley now alleges the following sentencing errors: First, Plaintiff–Appellee the United States ("Government") breached its plea agreement with Cogley by seeking the "vulnerable victim" enhancement of U.S. SENTENCING GUIDELINES MANUAL § 3A1.1(b)(1997). Second, there was insufficient evidence for the district court to enhance his sentence pursuant to the vulnerable victim provision. Third, the district court improperly added into Cogley's criminal history score a criminal contempt conviction that arose from the same fraudulent conduct as the § 1341 charge.

Because we find Cogley's arguments unpersuasive, we AFFIRM the district court judgment.

## I. BACKGROUND

Cogley is a former investment advisor who admitted to swindling sixty-eight customers, including friends and family, out of over $2 million during a one-year period

---

* The Honorable Jerome Farris, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

from August 1997 to August 1998. Bearing a Securities and Exchange Commission ("SEC") investment advisor's license and operating through his company the Ohio Estate Group ("OEG"), Cogley would send out mass mailings via the United States postal system to invite potential customers to attend investment seminars on topics such as living trusts and estate and financial planning. At the seminars, Cogley would schedule private consultations with his mostly elderly clientele, analyze their financial position, and then encourage his customers to purchase OEG promissory notes. He promised that the notes would realize between a 9.25 and 24 percent return, were backed by real estate and other business ventures, and were insured by the Federal Deposit Insurance Corporation. In addition, Cogley presented himself as a devoutly religious and independently wealthy man, and promised that he would personally guarantee every note. Once an investor had been enrolled in his scheme, Cogley would mail the client monthly account statements and interest checks.

In reality, Cogley invested only ten percent of the $3.3 million he received from his clients. Frequently, Cogley would simply use the investment funds of later clients to mail "interest and return of principal" checks to earlier clients. The remaining client funds were spent on OEG costs and Cogley's personal expenses.

On July 8, 1997, Cogley sent an account statement to an investor living in Blacklick, Ohio. The investor subsequently became suspicious that the statement was bogus. The resulting investigation led to a civil action brought by the SEC in 1998, in which Cogley was enjoined from "receiving directly or indirectly any funds from individuals or entities for the purpose of investment from Helen and John Delatore [two of Cogley's clients]." Cogley later pleaded guilty to intentionally and unlawfully disobeying this injunction, and was convicted by District Judge Algenon L. Marbley of criminal contempt on April 1, 1999.

On February 15, 2000, the Government filed in district court a one-count information charging Cogley and OEG with mail fraud. 18 U.S.C. §§ 1341 and 2. The same day, the Government filed an agreement between the parties in which Cogley agreed to plead guilty to the charge set forth in the information in exchange for certain concessions by the Government.

On March 16, 2000, Cogley entered his guilty plea before Judge Edmund A. Sargus, Jr. The Probation Office proceeded to compile a presentence report ("PSR") to which both parties raised objections. Key to the present action, the Government objected to the probation officer's failure to increase Cogley's offense level for defrauding vulnerable victims. The probation officer declined to recommend the increase because he found insufficient evidence that Cogley had "specifically targeted" elderly individuals in the scheme. Cogley objected to the inclusion of the criminal contempt conviction in his criminal history calculation on the basis that it "overstated" his criminal history. The probation officer rejected Cogley's argument.

On August 9, 2000, Judge Sargus held a sentencing hearing in which victims of Cogley's fraud were examined. Following testimony, and taking into consideration the recommendations of the PSR, Judge Sargus sentenced Cogley to fifty-seven months imprisonment, restitution in the amount of $2,751,828, and a special assessment of $100. Judge Sargus's sentence included a two-level enhancement for commission of a crime against vulnerable victims.

Cogley now appeals his sentence.

## II. DISCUSSION

### A. Breach of the Plea Agreement

Cogley's initial argument is that the Government breached the terms of the plea agreement by pursuing the vulnerable victim enhancement of U.S.S.G. § 3A1.1(b). Cogley now seeks specific performance of the plea agreement before a different judge.

It is apparent from the record that Cogley failed to register his objection sufficiently. Although Cogley's attorney made some statements suggesting the enhancement was not within the "spirit" of the agreement, Cogley's attorney made no indication that he wanted the court to take any action or to refrain from any action. There was no written notification to the court of a breach. The objection, such as it was, was made in an in-chambers conference and not mentioned again at the sentencing hearing held moments later. Certainly an objection need not always be written, nor must it always be made in open court, but it must be made in a form the district judge can recognize and to which he can respond. *See* Fed.R.Civ.P. 51.

█ Because Cogley failed to preserve his objection in the district court, we review the alleged breach for plain error. *See United States v. Barnes*, 278 F.3d 644, 646 (6th Cir.2002). "When reviewing a claim under a plain error standard, this Court may only reverse if it is found that (1) there is an error; (2) that is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* As we do not find the alleged error in this case to be plain, we have no cause to reverse under plain error review.

"Plea agreements are contractual in nature. In interpreting and enforcing them,

we are to use traditional principles of contract law." *United States v. Robison*, 924 F.2d 612, 613 (6th Cir.1991); *see also United States v. Wells*, 211 F.3d 988, 995 (6th Cir.2000) (quoting same). A court should hold the Government to a greater degree of responsibility than the defendant for imprecisions or ambiguities in plea agreements. *Wells*, 211 F.3d at 995 (citing *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir.1992)).

Cogley alleges that paragraph eleven of the plea agreement precluded the Government from seeking the vulnerable victim enhancement. It states:

> 11. Defendant JAMES MICHAEL COGLEY and the United States further agree that for sentencing purposes, the total amount of relevant conduct, pursuant to U.S.S.G. § 1B1.3, is more than $2,500,000 and less than $5,000,000. Both parties understand that this agreement as to relevant conduct is not binding on the Court.

J.A. at 24.

Chapter One, § 1B1.3, of the Guidelines defines relevant conduct:

> *Relevant Conduct (Factors that Determine the Guideline Range)*
>
> (a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1)(A) all acts and omissions committed, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ...
>
> ....
>
> that occurred during the commission of the offense of conviction, in preparation

for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

. . . .

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) . . ., and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

The dispute centers on the construction of the following clause from paragraph eleven: "for sentencing purposes, the total amount of relevant conduct, pursuant to U.S.S.G. § 1B1.3, is more than $2,500,000 and less than $5,000,000." Because "relevant conduct" is defined in U.S.S.G. § 1B1.3 as "factors that determine the guideline range," Cogley argues that the proper construction of the plea agreement would be "the total amount of [factors that determine the guideline range] is more than $2,500,000 and less than $5,000,000." In other words, the Government could not pursue any sentencing factors other than the stipulated dollar range. The Government responds that this is an untenable reading of the agreement. The language did not stipulate a total offense level or particular sentencing range, but merely a range of monetary loss to be used for relevant conduct. The Government reads paragraph eleven as stating "the total amount [of *dollar denominated* factors that determine the guideline range] is more than $2,500,000 and less than $5,000,000." The issue turns on whether the term "total amount" refers to all factors or only those factors that can be expressed in dollars. Cogley's interpretation is more grammatical, but the Government's interpretation better fits the customary usage of the terms "total amount" and "dollars."

Ordinarily, we would construe such an ambiguity in favor of the defendant. In *United States v. Fitch*, 282 F.3d 364, 365 (6th Cir.2002), a disputed plea agreement specified that "[t]he government agrees to recommend that the defendant's base offense level be calculated using 1000 pounds of marijuana and 1 kilogram of cocaine and that no other relevant conduct be used to increase the defendant's base offense level." *Id.* at 367. The Government recommended an enhancement for a "leadership role" under U.S.S.G. § 3B1.1(a). We found the plea agreement to be ambiguous because the defendant could have reasonably construed the Government's pledge to pursue "no other relevant conduct" as a pledge to pursue no adjustments in Chapter Three, which are included as part of the Guidelines definition of "relevant conduct." *Id.* at 367. Because the plea agreement was ambiguous, we construed the terms in favor of the defendant and remanded for resentencing before a different judge. *Id.* at 368.

Unlike Fitch, however, Cogley failed to preserve the alleged breach in district court. *Cf. id.* at 366. Under the second prong of plain error review, Cogley must show the error in this case was "plain." Plain error is that error that is "so obvious and substantial that failure to notice and correct it affect[ed] the fairness, integrity or public reputation of the judicial proceedings." *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir.1997) (citations omitted). Even were we to find the plea agreement in the present case ambiguous, ambiguity—by definition—cannot be so obvious as to constitute "plain error." Our case thus differs from *United States v. Barnes*, in which the Government's failure to adhere to the terms of a plea agreement was manifest. 278 F.3d at 646 (holding that the Government's failure to place on the record a recommendation for a more lenient sentence, in contravention of the

express terms of a plea agreement, constituted reversible plain error). Here there was no obvious breach of the plea agreement, only two plausible interpretations of the language of the agreement. It makes little sense to allow a defendant to sit quietly throughout the sentencing phase, give no notice to the prosecutor or the court that he perceives any breach, and then permit him to spring on the court an allegation of breach on appeal.

Our decision today reaffirms the appropriate role for plain error review of plea agreements as set out in *Barnes*. A district court is not bound to accept a plea agreement. *See United States v. Moore*, 916 F.2d 1131, 1135 (6th Cir.1990). Nevertheless, plea agreements whose express terms are conspicuously breached by the Government may be reversed on plain error review, because public confidence in the plea bargaining process and the entire justice system is undermined by the court's acquiescence to the breach. *See Barnes*, 278 F.3d at 648. Plea agreements whose terms are subject to equally plausible interpretations, however, should not be reversed on plain error review, because, absent demur by the defendant, the trial court has no independent reason to believe a breach has occurred. *See United States v. Koeberlein*, 161 F.3d 946, 950 (6th Cir. 1998) (finding no plain error, even assuming an ambiguous plea agreement, where the defendant had notice and an opportunity to object to a potential breach).

### B. Evidence of Vulnerable Victims

This court applies a clearly erroneous standard of review to the district court's factual findings, and while giving due deference to the district court's application of the Guidelines to those facts, it renders *de novo* review of the district court's legal conclusions. *United States v. Robinson*, 152 F.3d 507, 509 (6th Cir.1998). There is no error here.

Section 3A1.1(b) of the 1997 Guidelines provides that "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels." In this case, the record is replete with evidence that Cogley preyed on vulnerable victims. At least eight of the victims were over the age of seventy-five when Cogley swindled them, and one witness testified that Cogley actually targeted nursing homes. Furthermore, Cogley defrauded his own elderly mother- and father-in-law, John and Helen Delatore. We have held that the enhancement was proper on similar facts as the present case. *See United States v. Curly*, 167 F.3d 316, 319 (6th Cir.1999) (finding the vulnerable victim enhancement appropriate for a defendant who had swindled a number of victims in their late seventies and early eighties, and holding that evidence of "targeting" victims is no longer required).

### C. Criminal History Score

Cogley argues that the criminal contempt conviction and the sentence at bar arose from a single common plan or scheme. Cogley's objection that his criminal history was "overstated" failed to preserve this error in the district court. We therefore review this issue for plain error only.

Section § 4A1.2(a)(1) of the Guidelines states that for purposes of counting or disallowing convictions under § 4A1.1 (Criminal History Category) a "prior sentence" means "any sentence previously imposed upon adjudication of guilt [including a guilty plea] for conduct not part of the instant offense." Conduct that is part of

the "instant offense" refers to § 1B1.3 (Relevant Conduct). U.S.S.G. § 4A1.2 cmt. n. 1. "Relevant Conduct" means "all acts ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

To determine whether a "prior sentence" under U.S.S.G. § 4A1.2 is part of the present crime, we look to see whether the prior sentence and the present offense involve conduct that is severable into two distinct offenses. *See United States v. Bond,* 22 F.3d 662, 673 (6th Cir.1994). "The inquiry is necessarily fact-specific, and involves more than just consideration of the elements of the two offenses. Factors such as common plan or intent, and temporal and geographical proximity must be considered. The district court's factual findings are reviewed under the clearly erroneous standard." *Id.* at 673–74 (citations omitted).

█ Although the fraud against the Delatores was implicated in both the contempt conviction and the present crime, the offenses operated out of separate legal obligations and arose out of separate conduct. Whether Cogley had actually defrauded his investors was irrelevant to his obligation to obey the injunction. Furthermore, because Cogley did not press this issue in the district court, the record is insufficiently developed to identify any other factual elements Judge Sargus might have employed to distinguish the contempt conviction from the offense of conviction. For the foregoing reasons Cogley can state no error.

## III. CONCLUSION

The district court judgment is AFFIRMED.