**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rafael RODRIGUEZ, Defendant–
Appellant.**

No. 01–5181.

United States Court of Appeals,
Sixth Circuit.

July 9, 2002.

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Before KRUPANSKY and BOGGS, Circuit Judges; HOOD,* District Judge.

PER CURIAM.

Defendant–Appellant Rafael Rodriguez, Jr,[1] has appealed his sentence, contending that the district court improperly applied a two-level adjustment for an aggravating role in the subject offense when calculating Rodriguez's sentence under the Federal Sentencing Guidelines.

In the summer of 1999, with the aid of a confidential informant, Rhonda Fitch, the Federal Bureau of Investigation ("FBI") conducted a narcotics investigation in Memphis, Tennessee. On July 23, Fitch communicated by telephone with an individual self-identified as Rodriguez's brother. This individual informed Fitch that he would be sending six kilograms of cocaine to Memphis with two couriers, Miguel Salinas and Vincent Ramos. Later that day, because she was having trouble locating Salinas and Ramos in Memphis, Fitch contacted Rodriguez, who provided a cell phone number for the two couriers. On July 24, Fitch again contacted Rodriguez because she was confused as to whether Salinas and Ramos would arrive in Memphis with the cocaine or instead return to Texas without consummating the deal. Fitch asked Rodriguez to contact Salinas and Ramos with the purpose of indicating to them that she was ready.

Later that evening, Fitch arrived in the parking lot of a Hampton Inn in Memphis. After ascertaining that Salinas and Ramos had the cocaine on their person, Fitch informed the law enforcement officers

1. Rodriguez has employed an alias, "MiMi."

present on the scene. The law enforcement officers then arrested Salinas and Ramos. As for Rodriguez's involvement, Salinas and Ramos offered conflicting stories during their post-arrest interviews. Salinas claimed that Rodriguez had ordered them to make the delivery while Ramos claimed that some other individual had directed them.

On March 16, 2000, a federal grand jury indicted Rodriguez on charges of distributing methamphetamine[2] and conspiring to distribute cocaine. On November 3, 2000, the government and Rodriguez entered into a plea agreement. On the same day, Rodriguez pled guilty to conspiring to distribute cocaine.

On December 13, 2000, the Probation Office submitted its Presentence Investigation Report ("PSR"). The PSR related that "[i]n a statement to the probation officer, the defendant advised that he does accept responsibility for the instant offense. The defendant reported that he arranged for Salinas and Ramos to deliver drugs to the client in Memphis." The Probation Officer recommended that the district court upwardly adjust the offense level calculation by four levels due to Rodriguez's role as an organizer of criminal activity that involved five or more participants.

On January 31, 2001, the district court declined to adjust Rodriguez's offense level by four levels, instead adjusting it only by two levels. Though the record is unclear, the district court appears to have rejected the four-level route because of the government's proffered proof demonstrated that less than five members were involved in the conspiracy to distribute cocaine. Nevertheless, the district court upwardly adjusted Rodriguez's offense level by two

levels because of its finding that Rodriguez had an organizing role in the transaction. The district court then sentenced Rodriguez to seventy-eight months in prison and four years of supervised release. On February 6, 2001, Rodriguez timely filed his notice of appeal.

"This court applies a clearly erroneous standard of review to the district court's factual findings, and, while giving due deference to the district court's application of the guidelines to those facts, it renders *de novo* review of the district court's legal conclusions." *United States v. Curly,* 167 F.3d 316, 318 (6th Cir.1999) (quotation marks omitted). "The preponderance of the evidence standard applies to sentencing factors under the guidelines." *United States v. Castro,* 908 F.2d 85, 90 (6th Cir. 1990).

Rodriguez has argued that the Federal Sentencing Guidelines do not permit an aggravating role enhancement in his case because the evidence demonstrates, at most, that he supplied the couriers' phone number. The applicable sentencing guideline, U.S.S.G. § 3B1.1, provides:

§ 3B1.1.  AGGRAVATING ROLE

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants

2.  The methamphetamine counts in the indictment relate to events not relevant to the matter *sub judice.*

or was otherwise extensive, increase by 3 levels.

(c) *If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.*

U.S. Sentencing Guidelines § 3B1.1(c) (emphasis added). "The commentary to this section lists factors that a court may consider in determining a leadership role including: decision making, nature of participation, recruitment of accomplices, share of profits, degree of planning of the offense, nature and scope of the criminal activity, and control and authority exercised over others." *United States v. Ospina*, 18 F.3d 1332, 1337 (6th Cir.1994) (citing U.S.S.G. § 3B1.1, comment. (n. 4)). "[A] defendant in a drug conspiracy need not control or manage the activities of the co-conspirators-it is sufficient that the facts show that the defendant managed the criminal *activity.*" *United States v. Bashara*, 27 F.3d 1174, 1183 (6th Cir.1994).

Rodriguez has argued that the only proof of his involvement in the instant offense is the two phone calls Fitch made to him. While Rodriguez has admitted to committing the instant offense, he has contended that this meager evidence does not demonstrate that his conduct meets the standards used by this court in determining the existence of a leadership role. In this regard, Rodriguez has argued that he did not recruit any accomplices; he did not exercise any greater control over the enterprise than any other participant; and he did not claim a greater portion of the proceeds.

The government has relied on *United States v. Williams*, 894 F.2d 208, 214 (6th Cir.1990), for the proposition that a court may apply the § 3B1.1 enhancement where the defendant arranged the transaction. *See id.* ("We find that Davis' admission that he set up a cocaine transaction is sufficient to support the sentencing court's characterization of him as an organizer."). The government has pointed to Rodriguez's admission during the presentence investigation as evidence of his arranging of the transaction.

The district court properly enhanced Rodriguez's sentence due to his role in organizing the transaction. If Rodriguez had not arranged the initial telephone contact and resulting meeting between Fitch and Salinas and Ramos, the transaction would not have been consummated. Moreover, in his pre-sentence statement to the probation officer, Rodriguez admitted to arranging the transaction. As such, the district court properly adjusted Rodriguez's offense level to take into account his increased culpability.

Accordingly, the judgment of the district court is **AFFIRMED.**