NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0019n.06

No. 10-6243

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 09, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff - Appellee | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DENNIS ROGER BOLZE | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant - Appellant | ) | OPINION |

**Before: BATCHELDER, Chief Judge; MCKEAGUE and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Dennis Bolze perpetrated a $21 million Ponzi scheme for more than six years, affecting over one hundred victims in the United States and Europe and resulting in a multi-million dollar loss to fraud victims. Pursuant to an agreement with the Government, Bolze pled guilty to three counts of wire fraud and three counts of money laundering. The district court imposed a prison sentence of 327 months. Bolze now appeals his sentence, contending that the district court should not have applied a two-level vulnerable victim enhancement and that a prison term of 327 months is substantively unreasonable. We **AFFIRM**.

## I. FACTS AND PROCEDURAL HISTORY

Bolze stipulated to the following facts. From April 2002 through December 2008, Bolze owned, operated, and controlled all activities of Centurion Asset Management, Inc. (CAM) and Advanced Trading Services, Inc. (ATS), both Nevada corporations. During that period, he executed

1

a scheme to defraud by soliciting millions of dollars from investors under false pretenses, by causing investors to wire funds to him on certain dates, by failing to invest the funds as promised, and by misappropriating and converting investors' funds to his own benefit without the investors' knowledge or authorization. Bolze fraudulently represented that he would invest all of the funds entrusted to him in CAM's and ATS's day-trading of E-mini NASDAQ futures contracts and E-mini S&P 500 futures contracts.

Rather than invest the funds as promised, Bolze diverted new investor funds to existing investors, lulling them into the belief that they were receiving returns on their investments. To perpetuate the scheme, Bolze encouraged additional investments, discouraged withdrawals, and provided investors with fabricated documents containing fraudulent representations that Bolze, CAM and ATS had generated profitable returns on the investments. Bolze also posted fabricated day-trading results to the Internet for his investors to see. He admitted that he received more than $21 million from investors, of which approximately $9.6 million was used to re-pay existing investors and $1.6 million was actually invested. Bolze used the remaining funds to support his own lavish lifestyle.

The district court granted Bolze's request for a bifurcated sentencing hearing. In the first phase, the court held an evidentiary hearing on Bolze's numerous objections to the Presentence Report (PSR). The court heard the testimony of an FBI Agent, one of the victims, and Bolze. The Government presented a number of exhibits, and three other victims of the scheme provided oral victim impact statements to the court, although they were not sworn as witnesses. After considering the PSR, the parties' briefs, the testimony, the exhibits, and both oral and written victim impact statements, the district court issued a Memorandum and Order ruling on all of Bolze's objections,

2

but deferring the Government's request to deny Bolze a three-level reduction for acceptance of responsibility. The court applied the vulnerable victim enhancement over Bolze's objection.

In the second phase of the sentencing hearing, Bolze and the FBI Agent again testified. The court granted an acceptance of responsibility reduction, and the parties argued their positions on sentencing. The court determined that Bolze's total offense level was 37, with a criminal history category of III, resulting in an advisory guideline range of 252 to 327 months. In an exhaustive analysis of the § 3553(a) sentencing factors, the district court determined that a sentence of 327 months was sufficient, but not greater than necessary, to comply with the purposes of § 3553(a).

## II. STANDARD OF REVIEW

In reviewing a district court's application of the advisory sentencing guidelines, we examine the court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Ward*, 506 F.3d 468, 472 (6th Cir. 2007). In evaluating the sentence actually imposed, our touchstone is "reasonableness" as we review the sentence for an abuse of discretion. *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Because Bolze alleges only the substantive unreasonableness of his sentence, we ask whether the district court considered the § 3553(a) factors and chose a sentence "'sufficient, but not greater than necessary to comply with'" those factors. *Id.* at 647 (quoting 18 U.S.C. § 3553(a)). A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *Id.*

III. ANALYSIS

We carefully considered Bolze's challenges to his sentence in light of the thorough record developed in the district court. We conclude that the vulnerable victim enhancement was properly applied and that the sentence at the top of the advisory guideline range was substantively reasonable.

## A. Vulnerable victim enhancement

The applicable 2009 advisory guideline at issue, USSG § 3A1.1(b)(1), provided: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by **2** levels." Application Note 2 to § 3A1.1 further provided that a person who is a victim of the offense of conviction qualifies as a "vulnerable victim" if that person "is unusually vulnerable due to age, physical or mental condition, or . . . is otherwise particularly susceptible to the criminal conduct." The enhancement applies if the Government proves that one victim of the Ponzi scheme was unusually vulnerable. *See United States v. Anderson*, 440 F.3d 1013, 1017 (8th Cir. 2006).

Bolze denied that any of his victims were unusually vulnerable, testifying that "[e]verybody . . . I solicited . . . portrayed themselves as successful, engaged, articulate, had their wits about them, knew what they were doing." R. 83, Sent. H'rg Tr. at 110. He asserted that his victims invested only "discretionary money," that age alone is not sufficient to justify the enhancement, and that the present poor financial condition of his victims is not relevant to whether they were unusually vulnerable at the time they invested their money with him. He denied that he forced anyone to invest and he claimed that he did not know the Mallorcan investors because his associate dealt with them.

We first dispense with Bolze's contention that the district court could not consider victim impact statements if the victims did not testify under oath at his sentencing. A sentencing court is not limited to consideration of sworn testimony. Under the policy statement found at USSG

4

§ 6A1.3, the court may consider all information relevant to sentencing without regard to whether that information would be admissible at trial, and the Federal Rules of Evidence do not apply at the sentencing hearing. Fed. R. Evid. 1101(d)(3). The Crime Victims' Rights Act gave the district court express authority to consider victim impact statements. 18 U.S.C. § 3771(a)(4) & (b); USSG § 6A1.5. Consequently, we find no fault with the district court's decision to consider all of the victim impact statements submitted, whether sworn or unsworn.

As to Bolze's next argument, we are persuaded that the application of the vulnerable victim enhancement was not based on clearly erroneous facts, nor was the application of § 3A1.1(b)(1) to the facts legally improper. *See Ward*, 506 F.3d at 472. Whether a victim qualifies as "unusually vulnerable" is a factual finding that we review for clear error. *United States v. Mize*, No. 00-3079, 2000 WL 1785741, at *3 (6th Cir. 2000) (unpublished per curiam). The district court found, based on a preponderance of the evidence, that "many of the victims were retired, removed from the work force, and neither wealthy nor asset management savvy[,]" such that "the victims' ages, combined with defendant's representations that investing with defendant and CAM was the right decision *because* of victims' professed fears of financial instability in their retirement, indicates unusual[] vulnerability in regard to financial matters." R. 89, Memorandum at 25-26 (emphasis in original).

These factual findings are fully supported by the evidentiary record. Additionally, we will not disturb the district court's choice to believe the victims' statements over Bolze's testimony. Many victims reported that Bolze convinced them to invest by assuring them that their money would be safe, contrary to Bolze's assertion that his investors were "simply willing to take on more risky investments." *Id.* at 26. And many victims did not invest "discretionary money" as Bolze claimed,

but funds "they intended to use for their basic needs and to provide them with an income on which to live in their retirement." *Id.*

Furthermore, the preponderance of the evidence supports the district court's determination that Bolze knew or should have known that victims of his offense were unusually vulnerable to his fraudulent scheme. The district court found that Bolze knew "several of the victims were in or about to enter retirement," that Bolze "had personal dealings with the victims, going so far as to bring them to his home," and that Bolze expressly told investors that "the investment strategies he was advocating were ideal for people of their situation[.]" *Id.* at 26-27.

The experience of investor H.H., cited by the district court in its Memorandum (at pages 26-27, citing R. 69-6, p. 42), is particularly illustrative of Bolze's conduct and is alone sufficient to support application of the vulnerable victim enhancement in this case. H.H. was a 76-year old widow living in Mallorca who told the district court that she invested everything she had with Bolze and his companies in good faith. R. 69-6 at 42. She personally met with Bolze several times. He "wined and dined" her and invited her to his home. H.H. sent all of her savings to Bolze, who repeatedly assured her that her money was growing "spectacularly." *Id.* When the Ponzi scheme collapsed, H.H. lost her investment. Among other adverse impacts, she could no longer afford private health insurance. *Id.* She is now forced "to live on a very small state pension of approximately $175 per week" and spend the equity in her home on basic necessities. *Id.*

Not only does this victim impact statement confirm that Bolze *did* know about his Mallorcan investors, it demonstrates how Bolze developed a personal relationship with an elderly widow in order to defraud her of her entire life's savings. In a similar situation, the First Circuit approved application of the vulnerable victim enhancement where a victim lost her investment in a Ponzi

scheme and "was particularly susceptible based on her advanced age, status as a widow, . . . and desire to invest the money to establish an income." *United States v. Pol-Flores*, 644 F.3d 1, 4 (1st Cir. 2011). In our own unpublished opinion in *Mize*, we similarly determined that an 87-year old retired woman was unusually vulnerable and the enhancement applied where the victim was concerned about financial security and she was particularly susceptible to the fraud scheme perpetrated by her longtime insurance agent. *Mize*, 2000 WL 1785741, at *3. In *United States v. Curly*, 167 F.3d 316, 319-20 (6th Cir. 1999), we upheld application of the vulnerable victim enhancement where the defendants enticed elderly investors on multiple occasions over several years to invest their savings with the defendants, who then defrauded them of the money. We also affirmed a vulnerable victim enhancement where a fraud defendant targeted older, vulnerable people who would be willing to send money to him in the hope of winning a valuable prize. *United States v. Brawner*, 173 F.3d 966, 973 (6th Cir. 1999) (relying on fact that victims were "otherwise particularly susceptible to the criminal conduct"); *see also United States v. Williams*, 21 F. App'x 824, 826 (10th Cir. 2001) (holding elderly victims were unusually vulnerable where they lacked sophisticated financial knowledge and the defendant knew of his victims' financial condition).

Based on these authorities and the factual record, particularly H.H.'s victim impact statement, we uphold the district court's application of the two-level vulnerable victim enhancement. The court's careful examination of this issue leads us to conclude that no error occurred below.

## B. Substantive reasonableness of the sentence

Bolze's claim that his 327-month sentence is substantively unreasonable is without merit. The district court imposed a sentence within the applicable advisory guideline range, even though the sentence was the highest the court could give without an upward variance. We accord a

7

presumption of reasonableness to a sentence within the advisory guideline range. *See United States v. Henry*, 545 F.3d 367, 385 (6th Cir. 2008).

The district court did not select the sentence arbitrarily, base the sentence on impermissible factors, fail to consider pertinent § 3553(a) factors, or give an unreasonable amount of weight to any pertinent factor. *See Gunter*, 620 F.3d at 645. Rather, the court conscientiously evaluated each § 3553(a) factor and explained in detail how each factor influenced the court's sentencing decision. The court's extensive analysis assures us that the court chose a sentence sufficient, but not greater than necessary to comply with the purposes of § 3553(a).

## IV. CONCLUSION

Bolze perpetrated fraud for more than six years, devastated more than 100 victims, and misappropriated millions of dollars. For all of the reasons stated, we hold that the vulnerable victim enhancement was properly applied and that the 327-month sentence is substantively reasonable. Accordingly, we **AFFIRM**.