**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0018n.06**
**Filed: January 9, 2009**

No. 07-6011

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA

    Plaintiff-Appellant,

        v.

CHRISTOPHER HODGE,

    Defendant-Appellee.

_____/

On Appeal from the United
States District Court for
the Western District of Kentucky

**Before:**    **GUY and GRIFFIN, Circuit Judges; and WATSON, District Judge.**[*]

    **MICHAEL H. WATSON, District Judge.**   Christopher Hodge ("Hodge") pled guilty to one count of illegally possessing counterfeit currency, in violation of 18 U.S.C. § 472, pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C). At sentencing, the district court accepted the plea agreement and sentenced Hodge to probation plus four months of home incarceration. On appeal, the Government challenges the sentence as being contrary to the terms of the Fed. R. Civ. P. 11(c)(1)(C) plea agreement. For the following reasons, we vacate Hodge's sentence and remand for further proceedings.

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

**I.**

On August 26, 2006, Hodge was arrested in Shepherdsville, Kentucky for failing to

pay for gas at a service station.  Upon his arrest, Hodge was searched and seven counterfeit

Federal Reserve Notes were found in his wallet.  The Notes were four counterfeit $50 bills,

one counterfeit $20 bill, and two counterfeit $10 bills.  A brown mark was on one of the

counterfeit $10 bills, indicating an unsuccessful attempt to pass the bill.

On February 6, 2007, a federal grand jury in Louisville, Kentucky indicted Hodge on

one count of possessing counterfeit currency with the intent to defraud.  On

April 23, 2007, the parties entered into a plea agreement, pursuant to Fed. R. Crim. P.

11(c)(1)(C), in which Hodge agreed to plead guilty to the Indictment.  The plea agreement

set forth the following relevant provisions:

> 10.  At the time of sentencing, the United States will
>       -agree that a sentence at the low end of the applicable
>       Sentencing Guideline range is the appropriate disposition
>       of this case.

* * *

> 11.  Both parties have independently reviewed the Sentencing
>       Guidelines applicable in this case and in their best judgment
>       and belief, conclude as follows:

* * *

> B.  The Criminal History of defendant shall
>     be determined upon completion of the

presentence investigation, pursuant to
Fed. R. Crim. P. 32(c) . . . .

* * *

13.     . . . Defendant understands and agrees that nothing in this
plea agreement should be construed as a waiver by the
United States of its right to appeal the sentence under
18 U.S.C. § 3742.

* * *

20.     If the court refuses to accept this agreement and impose
sentence in accordance with its terms pursuant to Fed. R.
Crim. P. 11(c)(1)(C), this Agreement will become null and
void and neither party shall be bound thereto, and defendant
will be allowed to withdraw his guilty plea.

* * *

22.     This document states the complete and only Plea Agreement
between the United States Attorney . . . and defendant in this
case, and is binding only on the parties to this Agreement . . .
and cannot be modified other than in writing that is signed by
all parties or on the record in Court . . . .

On April 23, 2006, Hodge entered his guilty plea before the district court.  During the

plea colloquy, the following discussion occurred:

[David Weiser for the Government]: Paragraph 10 of the
plea agreement states the recommendation of the
United States, and of the parties really, and the
parties have agreed that a sentence at the low
end of the applicable sentencing guideline range
is the appropriate disposition of this case, and the
United States has also agreed that a two-level

reduction of the applicable offense level is
appropriate here for acceptance of responsibility.

* * *

[Court]:          What is that agreed upon sentence?

[Weiser]:         The low end of the guidelines.

[Court]:          That's your agreed upon sentence, the low
                  end of the guideline?

[Patrick Bouldin for Hodge ]:      That's correct.

* * *

[Court]:          Mr. Weiser, you say the low end.  What do you
                  anticipate his sentence will be?

[Weiser]:         Well, Your Honor, his criminal history is going to
                  dictate that.  We think that he's going to be either a
                  II or a III . . . .

* * *

[Court]:          Mr. Weiser, have you conferred with Probation to
                  try to get their best guess of what the calculations
                  might be?

[Weiser]:         I have not, Your Honor.

[Court]:          Mr. Bouldin, Have you?

[Bouldin]:        I have not either, Your Honor.  They have provided
                  us, as they do, with his criminal history from the
                  prebail report.

[Court]:          The U.S. has or Probation?

[Bouldin]:     Probation has.  Based upon that, I've estimated
               his criminal history is a III, which would be a Zone
               B sentence, which the low end would be a period
               of probation plus four months home detention.

[Court]:       So you anticipate that his sentence here, his agreed
               upon sentence that I may accept or reject, is probation
               plus four months home detention?

[Bouldin]:     Yes, Your Honor.

[Court]:       Is that what you said?

[Bouldin]:     Yes, that is correct.  Zone B sentence.

[Court]:       Zone B sentence, okay.  And has he served any
               time already?

At this point, the district court engaged in a discussion with counsel regarding whether

the three months Hodge served in jail should count towards the four months home detention.

At the end of the discussion, the district court stated:

[Court]:       Okay, I just want to be sure we are all on the same
               page here. You are on that page, too, Mr. Weiser?

[Weiser]:      Yes, Your Honor.

[Court]:       It doesn't matter - - if I did think that's right, then it
               doesn't  matter whether I call it probation or supervised
               release to you either, right?

[Weiser]:      I don't think the United States will lose any sleep over
               that.

The district court then engaged in the following dialogue with Hodge.

[Court]:        And you heard what Mr. Weiser said about your plea agreement?

[Hodge]:        Yes, ma'am.

[Court]:        Did you understand it?

[Hodge]:        Yes, ma'am.

[Court]:        Do you agree with it?

[Hodge]:        Yes, ma'am.

[Court]:        I want to ask you a few questions . . . Is it your understanding that you and the Government have agreed that the fair thing,  the right sentence, is for you to serve four months on home detention and have a period of supervision that may be called probation, may be called supervised release?

[Hodge]:        Yes, ma'am.

* * *

[Court]:        Okay.  Then there were numbers tossed around. You understand that this business about offense level 7 and criminal history III, do you understand that's all part of a guideline calculation in federal court?

[Hodge]:        Yes, ma'am.

[Court]:        And do you understand that those guidelines are intended to help federal judges reach the right sentence?

[Hodge]:        Yes, ma'am.

* * *

[Court]:     But you understand that you and the Government have
             agreed that you do want me in this case to follow
             those guidelines and to go to the low end of the guidelines?

[Hodge]:     Yes, ma'am.

* * *

[Court]:     Okay . . . I know you've agreed the guidelines will control
             here, but I can't even figure out what the guidelines are
             until after the Probation Office investigates your case and
             reveals the report to you and to the Government, and you
             both get to object to it if you want to.  Then I resolve
             any unresolved objections and proceed to sentence you.
             Do you understand that's the practice we follow here?

[Hodge]:     Yes, ma'am.

The district court then proceeded to accept Hodge's guilty plea and conditionally accepted

the plea agreement.

On June 4, 2007, the U.S. Probation office completed a Presentence Investigation

Report ("PSR") on Hodge.  The PSR calculated Hodge's Criminal History score at thirteen

which established a Criminal History category of VI.  This Criminal History category, and

an offense level of seven, established Hodge's recommended guideline sentencing range as

fifteen to twenty-one months of incarceration.

On July 12, 2007, the matter was set for sentencing.  The district court noted that there

was no agreement with respect to the Criminal History category.  Further, the district court

found that Hodge had a Criminal History category of VI and an offense level of seven, which

resulted in a Guideline range of fifteen to twenty-one months of incarceration.  The district

court accepted the plea agreement and sentenced Hodge to a term of two years probation with

four months home detention.  The district court stated it was creating a variance from the plea

agreement, which was supported by the "parties' understanding and agreement [at the plea

hearing] . . . that the parties were willing to agree to a sentence of probation, plus four

months."

The Government objected to the sentence at the hearing and argued it never agreed

to a sentence of four months.  The Government asserted if that was the agreed sentence, it

would have been specifically stated in writing in the plea agreement.  The Government

moved to withdraw from the plea agreement, pursuant to Paragraph 20, and the district court

denied the Government's request.  This appeal followed.

## II

Fed. R. Crim. P. 11(c)(1)(C), states

(c)      Plea Agreement Procedure.

> (1)      In General. An attorney for the government and the
>           defendant's attorney, or the defendant when proceeding
>           pro se, may discuss and reach a plea agreement. The
>           court must not participate in these discussions. If the
>           defendant pleads guilty . . . to either a charged offense or a
>           lesser or related offense, the plea agreement may specify
>           that an attorney for the government will:

* * *

> (C)      agree that a specific sentence or sentencing
>           range is the appropriate disposition of the case,
>           or that a particular provision of the Sentencing
>           Guidelines, or policy statement, or sentencing

factor does or does not apply (such a recommendation
or request binds the court once the court accepts
the plea agreement).

Once a district court accepts a Fed. R. Crim. P. 11(c)(1)(C) plea agreement, it is bound

by the bargain. *United States v. Mendall*, 905 F.2d 970, 972 (6th Cir. 1990) (citing *United*

*States v. Holman*, 728 F.2d 809, 813 (6th Cir. 1984)). "The district court is not authorized

to go beyond the confines of Rule 11 in accepting or rejecting plea agreements." *United*

*States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) (citing *United States v. Partida-Parra*,

859 F.2d 629, 632 (9th Cir. 1988)).  "Nothing in the rules even remotely allows the district

court to accept a guilty plea but rewrite the plea agreement, even if the modified agreement

is more favorable to the defendant." *Id*. (citing *United States v. Oelsen*, 920 F.2d 538, 540

(8th Cir. 1990)).  Furthermore, this Court has yet to adopt the position that a district court

may modify or reform a Rule 11(c)(1)(C) sentence on the basis of a mutual mistake of fact.

*See United States v. Peveler*, 359 F.3d 369, 378 n.4 (6th Cir. 2004).

"Plea agreements are contractual in nature.  In interpreting and enforcing them, we

are to use traditional principles of contract law." *United States v. Robinson*, 924 F.2d 612,

613 (6th Cir. 1991) (citations omitted).  Moreover, "any ambiguities in the language of a plea

agreement must be construed against the government." *United States v. Randolph*, 230 F.3d

243, 248 (6th Cir. 2000) (citation omitted).

Turning to the case at issue, the Court concludes the district court erred in sentencing

Hodge.  The terms of this 11(c)(1)(C) plea agreement were unambiguous.  Paragraphs 10 and

11 of the plea agreement clearly set forth the terms to determine Hodge's sentence.  He was to receive a sentence at the low end of the Guideline range, which would be determined after the calculation of Hodge's Criminal History category in the PSR.

This result is not altered by the exchange which transpired at the April 23, 2006 plea hearing.  A complete reading of the transcript reveals there was no meeting of the minds with respect to a specific sentence for Hodge.  In discussing the terms of the sentence, Mr. Weiser began by stating the language of Paragraph 10 of the plea agreement, which provides "the parties have agreed that a sentence at the low end of the applicable sentencing guideline range is the appropriate disposition of this case . . . ."  Additionally, when asked by the district court what the agreed sentence was, Messrs. Weiser and Bouldin both agreed that it was the low end of the Guidelines.  At no time during the plea hearing, when asked directly what the agreed sentence was to be, did the parties respond with a term of probation and four months home detention.

Furthermore, when the discussion began regarding a term of probation and four months home detention, it was against the backdrop of having already set forth the agreed terms by which Defendant was to be sentenced.  Additionally, it began in response to a query by the district court as to what the "anticipated sentence" would be.  This language signifies there were unknown factors yet to be determined affecting the final sentence.  Moreover, in response, Mr. Weiser identified the unknown factor, Hodge's Criminal History, and stated that the determination of his anticipated sentence was based on an estimate of a Criminal

History category III.  The district court then again used "anticipate" when discussing a potential sentence of probation plus four months home detention.

It was at this time that the district court began discussing how to address Hodge's already served time.  When asked by the district court if everyone was on the same page, it was in the context of how to address Hodge's already served jail time in light of the anticipated sentence.  There is nothing in this exchange which supports the conclusion that the Government should have been on notice that the plea agreement was being orally modified on the record in accord with Paragraph 20.  This conclusion is supported by the fact that, after this exchange with counsel, the district court reiterated to Hodge the unambiguous terms of the plea agreement.  First, the parties agreed that Hodge was to be sentenced at the low end of the Guidelines.  Second, the Guidelines, which would control, could not be determined until after the PSR was prepared.

Moreover, the Court finds the Government did not waive this argument by failing to object.  The cases cited by Hodge all involve the failure of a party to object at sentencing.  Furthermore, they all involve clearly defined moments in which the issue was presented. *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992) ("By failing to object at the crucial moment when the trial court inquired as to terms of its agreement, the government has waived its claims."); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("The defendant's failure to object to the government's statement at sentencing constitutes waiver in this situation.").  In contrast, in the instant case, the discussion regarding a sentence of

probation plus four months home detention occurred at the plea hearing, not at sentencing. Here, there was no "crucial moment" at which the Government should have been aware of the need to object. Instead, there was an extensive discussion of a potential sentence and how it would be addressed if, the as yet to be determined, Criminal History category III was, in fact, correct.

Accordingly, as the district court accepted the plea agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), it was bound to the bargain reached by the parties, a sentence at the low end of the Guideline range, calculated once the PSR determined Hodge's Criminal History category. The discussion during the plea hearing neither altered the terms of the plea agreement nor did it clearly modify the terms of the plea agreement on the record. Instead, it was a hypothetical as to what Defendant's sentence would be if he were a Criminal History category III. As such, by sentencing Hodge to probation plus four months home detention, the district court imposed a sentence which was not in accordance with the terms of the plea agreement as required by Fed. R. Crim. P. 11(c)(1)(C). Thus, pursuant to Paragraph 20, the plea agreement is null and void and the parties are not bound by its terms.

**SENTENCE VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**