RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRYAN PRESLEY,

*Defendant-Appellant*.

No. 20-5213

─────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:19-cr-20125-5—Jon Phipps McCalla, District Judge.

Decided and Filed: November 23, 2021

Before: BOGGS, MOORE, and LARSEN, Circuit Judges.

─────────────

**ON BRIEF:** Clare E. Freeman, SCOTT GRAHAM, PLLC, Portage, Michigan, for Appellant. Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

LARSEN, J., delivered the opinion of the court in which BOGGS, J., joined. MOORE, J. (pp. 11–14), delivered a separate opinion concurring only in the judgment.

─────────────

## OPINION

─────────────

LARSEN, Circuit Judge. Bryan Presley pleaded guilty to participating in a conspiracy to burglarize pharmacies and to a related assault of a police officer. Though Presley's plea agreement contained an appellate waiver, he now challenges his sentence. The government moved to dismiss. For the reasons stated below, we GRANT the government's motion and DISMISS this appeal.

I.

Between 2016 and 2018, a group of people burglarized more than ninety pharmacies throughout Tennessee, Alabama, and Mississippi.  An investigation by law enforcement revealed that Bryan Presley was directly involved in at least four of those burglaries, which resulted in the theft of approximately $25,000 in controlled substances, as well as other items.

The last of the burglaries occurred on December 6, 2018, in Brownsville, Tennessee. When officers responded to the scene sometime around 2:45 a.m., they saw a black Chevrolet Camaro pulled over on the side of the road with its lights off.  Presley was the driver.  As the Camaro attempted to flee, it spun out of control and came to a stop.  Officer Trevor Owens rushed from his patrol vehicle and pulled his firearm.  He ripped open the Camaro's passenger side door and ordered the occupants out.  But instead of complying, Presley punched the accelerator and sped off.  In doing so, he "nearly struck" Officer Owens, who was standing approximately two feet away from the car at the time.

Presley then led other responding officers on a high-speed chase lasting nearly five minutes.  During the chase, Presley reached speeds of over 100 miles per hour on rural two- and four-lane roads, passed by other vehicles (without his headlights on), turned in various directions, blew through stop lights, and drove recklessly through a residential neighborhood. The chase ended when Presley lost control of the Camaro and left a narrow, residential roadway, becoming stuck in somebody's front yard.

The occupants of the Camaro then fled on foot.  At least two escaped, but Presley was caught.  Law enforcement searched the Camaro and discovered a crowbar, a sledgehammer, bolt cutters, and a box containing several bottles of cough syrup from the recently burgled drug store.

A federal grand jury indicted Presley and five co-defendants for conspiring to burglarize several licensed pharmacies with the intent to steal controlled substances, in violation of 18 U.S.C. § 2118(d).  It also charged Presley with assaulting and putting the life of Officer Owens in jeopardy by the use of a dangerous weapon or device—namely, the Camaro—in violation of 21 U.S.C. § 2118(c)(1).

Presley pleaded guilty to both counts. As part of the plea agreement, the government agreed to recommend that Presley receive a full reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The parties also stipulated to three "specific offense characteristics" for the conspiracy count: (1) "the burglary involved a structure other than a residence, base offense level 12," *see* U.S.S.G. § 2B2.1(a)(2); (2) "[t]he offense involved more than minimal planning, increase by 2 levels," *see id.* § 2B2.1(b)(1); and (3) "[t]he loss was more than $20,000 but less than $95,000, increase by 2 levels," *see id.* § 2B2.1(b)(2)(C). The agreement then set forth the following provision: "It is the intention of the parties that the Court may accept or reject these stipulations immediately or after having had an opportunity to review the presentence report, but may not modify them. If the Court rejects these stipulations either party may withdraw from the agreement." The agreement also contained an appeal waiver, stating that:

> [I]n exchange for the undertakings made by the United States in this plea agreement, [Presley] hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing.

The agreement further provided that it "constitute[d] the entire plea agreement" and that "[n]o other additional promises, representations, or inducements, other than those referenced in this plea agreement, ha[d] been made to the defendant or the defendant's attorney with regard to this plea."

At the plea hearing, the court again read the plea agreement to Presley in its entirety. As part of the ensuing colloquy, Presley confirmed that he had discussed the appeal waiver with his attorney, was "giving up the right to appeal the sentence to be imposed," and would "not be appealing in this matter." The court asked Presley a second time whether he understood that he was "waiv[ing] or giv[ing] up [his] right to appeal . . . all or part of the sentence"; Presley again responded, "Yes, sir." The district court accepted Presley's plea.

At Presley's sentencing hearing, the district court said that it would accept the stipulation of the parties as to the three sentencing provisions. It also added one level because a controlled substance was taken, *see* U.S.S.G. § 2B2.1(b)(3), two levels for possession of the crowbar as a

"dangerous weapon," *see id.* § 2B2.1(b)(4), six levels for the assault of Officer Owens, *see id.* § 3A1.2(c)(1), and two levels for the risk created to others by Presley's flight, *see id.* § 3C1.2. After adding the number of offense units and subtracting Presley's acceptance of responsibility, the district court arrived at a total offense level of 24 and a criminal history category of V.[1] That translated to a Guidelines range of 92 to 115 months.

After addressing several of the 18 U.S.C. § 3553(a) factors, the district court imposed a middle-of-the-range sentence of 102 months as to each count, to be served concurrently. Presley appealed, challenging his sentence. The government moved to dismiss based on Presley's appellate waiver.

II.

"It is well settled that a defendant in a criminal case may waive any right by means of a plea agreement." *United States v. Smith*, 960 F.3d 883, 886 (6th Cir. 2020) (alteration adopted) (citation omitted). Here, Presley cannot overcome the appellate waiver in his plea. Under the agreement's plain terms, Presley waived the right to appeal "any sentence imposed" unless it: (1) exceeded the maximum permitted by statute, or (2) departed upward "from the guideline range that the court establishe[d] at sentencing." His within-Guidelines sentence did neither. Thus, he "may challenge his waiver of appeal rights only 'on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel.'" *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017) (quoting *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015)).

Presley purports to invoke the first ground,[2] urging that he did not knowingly and voluntarily waive his right to appeal "because his plea agreement anticipated a far lower advisory

---

[1]Pursuant to the Sentencing Guidelines, the district court calculated the offense level "for each offense that the defendant conspired to commit." *See* U.S.S.G. § 1B1.2(d) & cmt. n.4. It then arrived at a total offense level of 24 using the procedure set forth in U.S.S.G. § 3D1.4.

[2]Presley briefly suggests in his reply that we could "consider" an ineffective-assistance claim. But this argument is forfeited, both because it is undeveloped, *see United States v. Brown*, 819 F.3d 800, 829 (6th Cir. 2016), and because it was first raised in a reply brief, *see United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009). In any event, we find the trial record "incomplete or inadequate" to assess Presley's claim on direct review. *Massaro v. United States*, 538 U.S. 500, 505 (2003).

guideline sentencing range." His position is without merit. We agree with the district court that Presley "knowing[ly] and voluntar[ily]" waived his right to appeal and that he was "aware of . . . the consequences of the plea." Thus, both his appellate waiver and his "plea agreement as a whole" are enforceable. *United States v. Ataya*, 869 F.3d 401, 402 (6th Cir. 2017) (order).

## A.

At the outset, we clarify the issue before us and our standard of review. Presley claims that his appellate waiver is unenforceable. But, as we have previously noted, Presley's "plea agreement contained a broad waiver of his right to appeal, and he confirmed multiple times during his rearraignment that he understood the provisions and the consequences of waiving his right to appeal." *United States v. Presley*, No. 20-5213, 2021 U.S. App. LEXIS 335, at *1–2 (6th Cir. Jan. 6, 2021). Accordingly, Presley's appellate waiver is valid so long as he "entered into the plea agreement as a whole knowingly and voluntarily." *Id.* at *2 (quoting *Ataya*, 869 F.3d at 402).

Presley argues that he did not "knowingly and voluntarily" enter into the agreement because he believed the district court could not add any enhancements to his sentence beyond those contained in the plea agreement. But Presley did not object on that ground below. We therefore agree with the government that plain-error review applies. *See United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020); *United States v. Harris*, 790 F. App'x 770, 773 (6th Cir. 2019); *United States v. Mobley*, 618 F.3d 539, 544 (6th Cir. 2002).

We note in this regard that Presley never specifies the basis for his claim that his plea was not knowing and voluntary. The concurrence casts the claim as arising under Federal Rule of Criminal Procedure 11. We are not so sure. Presley never even mentions Rule 11 in his briefing, so perhaps he intended to raise a claim under the Constitution. For present purposes, it does not matter. "[T]he whole purpose of Rule 11 is to ensure a voluntary and knowing plea." *United States v. Davis*, 796 F. App'x 886, 888 (6th Cir. 2019); *see also United States v. Vonn*, 535 U.S. 55, 58 (2002); *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). And so, the constitutional and rule-based challenges are often "entangled." *United States v. Ataya*, 884 F.3d 318, 323 (6th Cir. 2018). How we construe Presley's claim makes no difference in this case.

Plain-error review applies either way. *See Greer v. United States*, 141 S. Ct. 2090, 2097, 2100 (2021); *United States v. Pitts*, 997 F.3d 688, 697, 701–02 (6th Cir. 2021); *Hobbs*, 953 F.3d at 857. To the extent that unpublished authority suggests otherwise, it was in error. *See United States v. Vargas Ruiz*, No. 20-2175, 2021 WL 2935343, at *3 (6th Cir. July 1, 2021).

Presley tries to escape plain-error review by arguing that he did preserve an objection. We are not persuaded. First, he notes that in his objections to the presentence report (PSR), his counsel "asked the Court to adopt the stipulation of the parties in the plea agreement for an adjusted offense level of 16." This, he says, was an objection "to going beyond the sentencing stipulations in the plea agreement." We find that to be a stretch. Presley ignores the context of the statement, which was made only as part of his objection to the multi-count adjustment in the PSR. Indeed, later in Presley's objections, he specifically asked the district court to find a total offense level of 20. That level necessarily contemplated enhancements not contained in the stipulations. Given this context, we do not see how the district court or the government would have been aware that Presley believed the plea agreement did not permit additional enhancements. "A party must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (citation omitted). And Presley's PSR objections— which are inconsistent with his position on appeal—do not meet this standard.

Second, Presley points to the fact that he told the district court he wanted to appeal. But the district court told him that the appeal waiver foreclosed most grounds for appeal; and Presley never said anything "sufficiently specific to provide the court or the government an opportunity to address the legal point he now makes"—that Presley thought his plea agreement, including the waiver provision, was invalid because the district court had added enhancements beyond the stipulations in the plea agreement. *United States v. Nesler*, 659 F. App'x 251, 254 (6th Cir. 2016) (citing *Bostic*, 371 F.3d at 871); *see United States v. Blood*, 435 F.3d 612, 625 (6th Cir. 2006).

Third, Presley claims that by the time the district court imposed his sentence, it was "too late" to lodge an objection. But the sentencing transcript tells a different story. At the end of the hearing, the district judge explicitly asked: "The Court having pronounced the sentence, are

there any objections not previously raised by the defense?" Presley's counsel replied, "Nothing not previously raised[.]" Despite this "meaningful opportunity to object," Presley "declined the court's invitation" to assert the ground he now raises for the first time on appeal. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc) (citation omitted). By doing so, he "deprived the [district] court of its due 'opportunity to address the [alleged] error in the first instance,' and failed to ensure that the issue was sufficiently discussed to allow this Court 'to engage in more meaningful review.'" *United States v. Igboba*, 964 F.3d 501, 508 (6th Cir. 2020) (quoting *Bostic*, 371 F.3d at 871).

B.

Because plain error applies, Presley "must identify an (1) error (2) that was obvious or clear, (3) that affected his substantial rights." *Hobbs*, 953 F.3d at 857 (alteration adopted) (citation omitted). Only "if the above three prongs are satisfied" do we then have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). Presley cannot meet the second or third prongs, and so we need not address the first.

To meet the second prong of plain-error review, Presley must show that it should have been obvious that he understood his plea agreement to forbid the district court from applying additional enhancements. He has not done so.

Start with the provisions of the agreement itself. The parties stipulated as to three "specific offense characteristics pursuant to U.S.S.G. § 2B2.1" for one of the two counts. *Cf.* Fed. R. Crim. P. 11(c)(1)(C) (enabling parties to agree on "particular provision[s] of the Sentencing Guidelines" that will apply). But the agreement said nothing about *further* Guidelines that might apply to that count. *See United States v. Dahmen*, 675 F.3d 244, 248–49 (3d Cir. 2012). Nor did it say anything *at all* about the Guidelines that might apply to the other count. And nowhere does the agreement reference a total offense level or final Guideline range that Presley might reasonably have relied upon. To the contrary, the agreement contained a

merger clause providing that "[n]o other additional promises, representations, or inducements, other than those referenced in th[e] plea agreement, ha[d] been made to [him]."

Next consider Presley's affirmations at the change-of-plea colloquy. After the court read the agreement to Presley, it informed him that he faced a maximum sentence of 10 years on one count and 25 years on the other. Presley said he understood those were "the maximum penalties available." The district court then told Presley that it would "not be able to determine the advisory guideline range applicable . . . until after the presentence report ha[d] been completed" and that "the sentence that is ultimately imposed may be different from any estimate of sentence given to [Presley] by [his] counsel, government counsel or anyone else[.]" Both times, Presley confirmed that he understood. He "is bound by [that] assent." *United States v. Austin*, 830 F. App'x 460, 464 (6th Cir. 2020) (citing *Ramos v. Rogers*, 170 F.3d 560, 564 (6th Cir. 1999)).

Were that not enough, Presley's subsequent actions confirm all that we have said so far. First, in his objections to the PSR, Presley specifically argued for a total offense level of 20, even though the plea stipulations added up to a level of 16 and contemplated further reductions for acceptance of responsibility. This shows that Presley understood that the district court could add further enhancements in calculating a sentencing range. Second, despite a number of disputes as to certain provisions at the sentencing hearing, Presley never argued that they were inappropriate for the reason he now suggests—that the district court's application of them would "vitiate[] the plea agreement." We find it highly unlikely that Presley would not have raised this objection if he had truly believed that adding to his offense level was impermissible under the terms of the agreement. *See United States v. Carr*, 170 F.3d 572, 576 (6th Cir. 1999). Third, and relatedly, Presley did not move to withdraw his plea. He had ample opportunity to do so, both in the weeks after the PSR was issued and during the sentencing hearing as the district court accepted various adjustments. Tellingly, though, he never did. *See Williams v. United States*, 47 F. App'x 363, 369 (6th Cir. 2002) ("While the failure to move to withdraw may not be determinative, where there is a failure to do so, 'a defendant . . . faces a high hurdle on appeal.'" (alteration in original) (quoting *United States v. Santo*, 225 F.3d 92, 97 (1st Cir. 2000)); *accord Austin*, 830 F. App'x at 462; *United States v. Swinney*, 728 F. App'x 485, 488 (6th Cir. 2018).

In light of all this "contemporaneous evidence," *Hobbs*, 953 F.3d at 857, we are convinced that Presley "was adequately informed of the consequences of his plea, even if the specific Guideline range was not known by him," *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990). "Although [Presley] may have been unaware of the specific result once the Guideline[s] [were] applied to him, he was aware of the consequences of entering into the plea agreement." *Id.* at 254; *see United States v. Varner*, 598 F. App'x 389, 391–92 (6th Cir. 2015). His plea was therefore knowing, voluntary, and enforceable. And there was certainly no plain error.

Presley's principal response is that the district court, while purporting to accept the three stipulations, instead "essentially rejected" or at least "modified them" by imposing further enhancements. For the reasons set forth above, we disagree that the agreement's terms precluded further enhancements—at least not plainly so. And, in any event, the plea agreement itself provides the remedy—that Presley could "withdraw from the agreement" if the stipulations were rejected and roll the dice with a trial or a renewed plea negotiation. He did not attempt to do so.[3] Not below. And not even here. Instead, Presley seeks to retain the benefits of the plea bargain while challenging his sentence with an appeal, in violation of the agreement's express terms. That he cannot do.

For related reasons, Presley cannot clear the third hurdle of the plain-error test—showing a "reasonable probability" that, but for the alleged error, "he would not have entered the plea." *Hobbs*, 953 F.3d at 857 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (1998)). To be sure, his appellate brief states that he entered the agreement only on the understanding that his Guidelines range would be lower. But that conclusory submission does not suffice. *See, e.g.*, *United States v. Davis*, 796 F. App'x 886, 890 (6th Cir. 2019); *United States v. Wilbourn*, 766 F. App'x 222, 226 (6th Cir. 2019). "The Supreme Court has cautioned that '[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded,' but 'should instead look to contemporaneous evidence to substantiate a defendant's

---

[3]To the extent Presley believes the district court should have acted sua sponte to offer him the chance to withdraw from his plea or confer further with counsel, we disagree. "[I]t would be absurd to require trial judges to offer defendants the opportunity to withdraw pleas in circumstances where the judge has explicitly accepted (*i.e.*, not rejected) the plea agreement and believes he is abiding by the plea agreement." *Carr*, 170 F.3d at 576.

expressed preferences.'" *Hobbs*, 953 F.3d at 857 (alteration in original) (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005). Presley points to no such evidence. And, as described above, the evidence in fact suggests the opposite.

In the end, Presley may have hoped for a more lenient sentence. "But a 'plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true.'" *Davis*, 796 F. App'x at 890 (quoting *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975)). Presley has not shown that his plea was invalid or that the district court plainly erred in any way. Thus, we will enforce the appellate waiver contained in the plea agreement. *See id.*; *Morrison*, 852 F.3d at 490.

\* \* \*

Because the terms of Presley's appellate waiver squarely cover this appeal, we GRANT the government's motion to dismiss.

---

**CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I concur in the majority's ultimate determination that we should enforce the appellate waiver contained in Presley's plea agreement and grant the government's motion to dismiss. I write separately, however, because I do not agree with all of the majority's analysis of Presley's claim that his appellate waiver is invalid. The majority construes Presley's claim to be a constitutional argument that his plea was not knowing and voluntary and thus his appellate waiver should not be enforced. Maj. Op. at 4–5. But because Presley argues that the district court improperly modified the terms of his plea agreement, I believe his claim falls under the category of alleging a violation of Federal Rule of Criminal Procedure 11 and analyze it accordingly.

Presley contends that the district court improperly modified the stipulations contained in the plea agreement and thus nullified the plea agreement and its appellate waiver. Appellant's Br. at 8, 11–12. We have held that when a district court modifies or rewrites a plea agreement, it has violated Rule 11 and breached the plea agreement, rendering the agreement null and void. *United States v. Skidmore*, 998 F.2d. 372, 375–76 (6th Cir. 1993); *United States v. Hodge*, 306 F. App'x 910, 914–15 (6th Cir. 2009). Presley's contention falls squarely in the category of a Rule 11 claim. But because Presley never objected that the district court violated the plea agreement by adding additional sentencing enhancements that the plea agreement foreclosed, we must review his claim for plain error. For us to conclude that Presley's appellate waiver is invalid, Presley must demonstrate that (1) the district court erred, (2) the error was plain, (3) the error affects Presley's substantial rights, and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732–34, 736 (1993) (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). The third element requires Presley to "show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Presley cannot meet this burden.

Pursuant to Rule 11(c)(1)(C), the parties agreed that three separate provisions of the U.S. Sentencing Guidelines Manual ("U.S.S.G.") would apply to Presley's first count.  R. 126 (Plea Agreement at 2–3) (Page ID #215–16); *see* Fed. R. Crim. P. 11(c)(1)(C) (authorizing the parties to agree that "a particular provision of the Sentencing Guidelines . . . or sentencing factor does or does not apply").  Specifically, the parties agreed that Presley's base offense level and specific offense characteristics would be calculated under U.S.S.G. § 2B2.1 and that his base offense level would be twelve, with two levels added because the offense involved more than minimal planning and another two levels added because of the amount of loss involved in the offense. R. 126 (Plea Agreement at 2–3) (Page ID #215–16).  The district court accepted the plea agreement and these stipulations.  *See* R. 235 (Sentencing Hr'g Tr. at 35–36) (Page ID #1160–61).  Additionally, during sentencing, the district court added two more specific offense characteristics under § 2B2.1 and two other enhancements found in Chapter Three of the Guidelines.  *Id.* at 26 (Page ID #1151); *see also* R. 183 (PSR at 12–16) (Page ID #947–51).  And the district court did not uniformly apply the accepted loss-amount stipulation to each subcount under the relevant count.  R. 183 (PSR at 12–16) (Page ID #947–51).  In essence, Presley's contention is that once the district court accepted the plea agreement, it was bound to apply only the stipulated base offense level and specific offense characteristics; therefore, by adding additional enhancements the district court modified, and thus breached, the plea agreement.

"Plea agreements are contractual in nature.  In interpreting and enforcing them, we are to use traditional principles of contract law."  *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991).  We interpret a plea agreement "as a reasonable person would interpret the written words."  *United States v. Ykema*, 887 F.2d 697, 699 (6th Cir. 1989).  And we construe any ambiguities in the plea agreement against the government.  *United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002).  "[O]nce the district court accepts the plea agreement, it is bound by the bargain."  *United States v. Mandell*, 905 F.2d 970, 972 (6th Cir. 1990).  The question for us to resolve is whether a reasonable person would understand that the plea agreement prohibited the district court from adding any additional enhancements under § 2B2.1 or Chapter Three of the Guidelines.

We start with the additional enhancements that the district court added under Chapter Three of the Guidelines. The plea agreement clearly stipulates the base offense level for Presley's first count under § 2B2.1 and two corresponding specific offense characteristics. However, it does not contain any agreement concerning whether Chapter Three enhancements do or do not apply to Presley's offense conduct under his first count. "Absent such a promise . . . the District Court could [not] have violated the agreement by deeming [Chapter Three enhancements] applicable (or inapplicable)." *United States v. Dahmen*, 675 F.3d 244, 249 (3d Cir. 2012); *see also United States v. Noriega*, 760 F.3d 908, 912 (8th Cir. 2014) (concluding that a plea agreement was not breached when additional adjustments under Chapter Three were applied because the parties "only stipulated to [the defendant's] base offense level under Chapter Two of the Guidelines" and "did not address possible adjustments" (alteration in original) (quoting *United States v. Leach*, 491 F.3d 858, 864 (8th Cir. 2007))). Thus, the district court did not plainly err in applying the Chapter Three enhancements.

It is a much closer question whether the stipulations precluded the district court from applying any further specific offense characteristics under § 2B2.1. On the one hand, the plea agreement did not specifically state that the agreed-upon base offense level and specific offense characteristics were the only § 2B2.1 provisions applicable to Presley's first count. On the other hand, courts have indicated that when parties stipulate a base offense level and corresponding specific offense characteristics, the "defendant has solidified where he will start in Chapter Two of the guidelines" even if "he has not protected himself against adjustments in [other chapters]." *United States v. Martinez-Noriega*, 418 F.3d 809, 813 (8th Cir. 2005); *see also Noriega*, 760 F.3d at 911–12; U.S.S.G. § 1B1.1(a)(2) (instructing that a sentence and guidelines range should be determined by eight sequential steps and that step two consists of "[d]etermin[ing] the base offense level and apply[ing] any appropriate specific offense characteristics . . . contained in the particular guideline in Chapter Two"). Thus, a reasonable person could construe the stipulations as setting the applicable § 2B2.1 base offense level and specific offense characteristics and that no other enhancements under Chapter Two were applicable. Ordinarily, we would construe such an ambiguity in favor of the defendant. But because we must review the district court's actions for plain error, Presley cannot prevail. "Even were we to find the plea agreement in . . . [this] case ambiguous, ambiguity—by definition—cannot be so obvious as to constitute 'plain error.'"

*United States v. Cogley*, 38 F. App'x 231, 235 (6th Cir. 2002). Without an obvious and express breach of the plea agreement, we cannot conclude that the district court plainly erred and violated the requirements of Rule 11.

Accordingly, I agree with majority that we must enforce the appellate waiver contained in the plea agreement. But I take time to note that the confusion in this case could have been avoided had the government drafted the plea agreement stipulations with more precision. We have held that "[b]oth constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in . . . plea agreements." *Fitch*, 282 F.3d at 367–68 (alteration in original) (quoting *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992)). But for plain-error review, the district court might have committed a reversible error due to the government's failure to live up to that responsibility. Nevertheless, I join with the majority in granting the government's motion to dismiss.