NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0284n.06

No. 21-1621

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

WILLIAM SAOUD, PATRICIA BOLAND-SAOUD, and BILL SAOUD FINANCIAL, LLC,

  Plaintiffs-Appellants,

v.

EVEREST INDEMNITY INSURANCE COMPANY,

  Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 14, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: SILER, McKEAGUE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. William Saoud sells insurance-related products. Beginning in 2017, he offered some of his clients a new financial instrument: a Memorandum of Indebtedness issued by 1 Global Capital, LLC. Unfortunately, the investment opportunity was too good to be true. 1 Global Capital declared bankruptcy, and the SEC sued the company for alleged violations of the Securities and Exchange Act. Saoud's clients also sued him. Saoud sought indemnification from his insurer, Everest Indemnity Insurance Company, and ultimately filed this lawsuit for a declaratory judgment and breach of contract. The district court granted summary judgment in favor of Everest, concluding that the claims related to 1 Global Capital did not fall within the scope of the insurance policy. We affirm.

I.

William Saoud owns Bill Saoud Financial, LLC, which sells insurance-related products, such as annuities, life insurance, and long-term health care products. Saoud had a professional liability policy with Everest Indemnity Insurance Company.

In 2017 and 2018, Saoud offered some of his clients an investment product called the 1 Global Memorandum of Indebtedness issued by 1 Global Capital, LLC. Unfortunately, 1 Global Capital declared bankruptcy soon after, jeopardizing the investments Saoud's clients had made. And the SEC sued 1 Global Capital for violations of the Securities and Exchange Act. *See SEC v. 1 Global Capital LLC*, No. 18-cv-61991, 2019 WL 1670799, at *1 (S.D. Fla. Feb. 7, 2019).

Several clients sued Saoud and his wife, Patricia, who was also an employee of the firm. Their complaints generally alleged that the Saouds had falsely represented that the 1 Global Memorandum of Indebtedness was a secure investment and had sold an unregistered security in violation of Michigan's securities laws. On December 13, 2018, pursuant to his professional liability policy with Everest, Saoud notified Everest's agent, Lancer Claims Services, of the first of these lawsuits. Lancer responded that Saoud should hire his own attorney while it investigated coverage; if Lancer found that the policy covered the claim, Everest would "reimburse [him] for [his] fees and expenses." On February 19, 2019, Saoud Financial notified Lancer of two additional lawsuits filed by clients and of investigations by Michigan's Department of Licensing and Regulatory Affairs and the SEC. Saoud Financial claimed expenses of over $100,000. Lancer and Everest never responded to this notice. Being in "limbo" as to Everest's position on coverage, Saoud Financial reached out again to Lancer and notified it of an upcoming mediation, so that Everest could participate. But the Saouds never heard from Lancer or Everest. The Saouds eventually settled the lawsuits.

On July 10, 2019, the Saouds and Saoud Financial sued Everest in Michigan state court, claiming breach of contract and seeking a declaratory judgment. Everest removed the suit to federal court and finally notified the Saouds that it would not defend or indemnify them for the lawsuits because, in its view, the claims did not fall within the scope of the policy. The district court ultimately granted summary judgment to Everest, concluding that a coverage exclusion applied. The Saouds appeal.

## II.

We review the district court's summary judgment decision de novo. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). "[S]ummary judgment is warranted only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a) and *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

The parties agree that Michigan law governs the policy. Under Michigan law, courts employ a two-part analysis to determine an insurance policy's coverage: "First, it must be determined whether 'the policy provides coverage to the insured,' and, second, the court must 'ascertain whether that coverage is negated by an exclusion.'" *Hunt v. Drielick*, 852 N.W.2d 562, 565 (Mich. 2014) (quoting *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 510 (Mich. 1995)).

Like the district court, we believe that this case can be resolved based on the policy's "Unregistered Security Exclusion."[1] That provision excludes coverage for any claim "[b]ased upon, attributable to, or arising out of the use of or investment in any security that is not registered

---

[1] Therefore, we need not address whether the lawsuits against the Saouds were based on the Saouds' "professional services" as insurance agents under the policy.

with the Securities and Exchange Commission."  Below, the parties disputed whether the 1 Global Memorandum of Indebtedness was a "security" within the meaning of the exclusion.  *Saoud v. Everest Indem. Ins. Co.*, 551 F. Supp. 3d 777, 794 (E.D. Mich. 2021).  The district court explained that a "note" is presumed a "security" under the Securities Acts and concluded that the 1 Global Memorandum of Indebtedness was a "note."  *Id.* at 796 (citing *Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990)).  The court also confirmed, after ordering supplemental briefing, that the 1 Global Memorandum of Indebtedness was a "security" because it was not a note that matured in nine months or less and, even if it was, the 1 Global Memorandum of Indebtedness was not "commercial paper."  *Saoud v. Everest Indem. Ins. Co.*, 564 F. Supp. 3d 597, 602–05 (E.D. Mich. 2021).

In this court, the Saouds raise just one argument in response: They argue that the "Unregistered Security Exclusion" applies only if the complaints alleged that the Saouds sold "securities" that were required to be registered with the SEC.  According to the Saouds, the complaints alleged only that the 1 Global Memorandum of Indebtedness was a security under Michigan law, not federal.  So the Saouds conclude that the Security Exclusion does not apply.

But the district court deemed this argument forfeited because it was presented too late.  *Saoud*, 564 F. Supp.3d at 601.  The Saouds failed to raise this argument in their motion for summary judgment, reply brief, or response to Everest's motion for summary judgment.  Instead, the Saouds first raised this argument in their supplemental briefing, even though the district court had directed the parties to brief only whether the 1 Global Memorandum of Indebtedness was a "security" and had admonished the parties that "[n]o other issues may be addressed."  *Saoud*, 551 F. Supp. 3d at 799.  We cannot say that the district court abused its discretion by finding a forfeiture under these circumstances.  *See AES-Apex Emp'r Servs., Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019).  By not properly raising this issue below, the Saouds forfeited it.  *See Am. Bank, FSB*

*v. Cornerstone Cmty. Bank*, 733 F.3d 609, 615 (6th Cir. 2013).  And the Saouds develop no other argument that the "Unregistered Security Exclusion" does not apply.[2]

The Saouds instead argue that waiver or estoppel should preclude Everest's reliance on the "Unregistered Securities Exclusion" because Everest failed to timely disclaim coverage.  In limited circumstances, Michigan courts prohibit insurers from raising defenses to coverage that they could have raised earlier.  *See Kirschner v. Process Design Assocs., Inc.*, 592 N.W.2d 707, 709 (Mich. 1999).  But this doctrine usually cannot "broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy." *Id.* at 709–10 (citing *Ruddock v. Detroit Life Ins. Co.*, 177 N.W. 242, 248 (Mich. 1920)).  Michigan courts do recognize an exception when "the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions."  *Lee v. Evergreen Regency Coop. & Mgmt. Sys., Inc.*, 390 N.W.2d 183, 186 (Mich. Ct. App. 1986).  Such cases generally involve an insurance company that "has either misrepresented the terms of the policy to the insured or defended the insured without reserving the right to deny coverage." *Id.* (citations omitted).

The Saouds seek to invoke this exception, relying on *Meirthew v. Last*, 135 N.W.2d 353 (Mich. 1965).  *See Lee*, 390 N.W.2d at 186 (citing *Meirthew* as an example in which the equities favored the insured).  In *Meirthew*, the defendant's insurer represented the defendant in a tort suit. 135 N.W.2d at 354.  The three-year litigation ended in a jury verdict for the plaintiff.  *Id.*  When the plaintiff sought payment from the insurer, the insurer disclaimed liability, invoking a "Risk Excluded" clause it had never before mentioned.  *Id.*  The Michigan Supreme Court held that the

---

[2] The Saouds also suggest that the district court erred in finding that the 1 Global Memorandum of Indebtedness is a "security."  But this argument is forfeited because it is undeveloped.  *United States v. Presley*, 18 F.4th 899, 902 n.2 (6th Cir. 2021).

insurer was estopped from asserting the exclusion because it had taken over the defense of the litigation without providing the insured with timely notice "of the policy defense or defenses the insurer had in mind." *Id.* at 356; *see also Fire Ins. Exch. v. Fox*, 423 N.W.2d 325, 326–27 (Mich. Ct. App. 1988) (collecting cases) (describing the "general rule" that "an insurer which undertakes the defense of an insured while having actual or constructive knowledge of facts which would allow avoidance of liability will be deemed to have waived its right to avoid coverage unless reasonable notice is served to the insured of the possible disclaimer of liability").

*Meirthew* is inapposite. Everest never represented the Saouds in the underlying litigation and therefore never controlled the Saouds' litigation strategy to their detriment. Nor have the Saouds provided any evidence of actual prejudice from Everest's delay in informing the Saouds that it would neither defend nor indemnify them. Instead, they argue that prejudice should be presumed. But Michigan caselaw affords such a presumption only "when an insurer undertakes to defend its insured without reservation of rights, continues to defend although it possesses sufficient information concerning a possible policy exclusion, and subsequently gives notice of its intent to deny coverage." *Multi-States Transp., Inc. v. Mich. Mut. Ins. Co.*, 398 N.W.2d 462, 465 (Mich. Ct. App. 1986). This is not one of those cases. So no presumptive prejudice applies, and Everest did not waive the right to raise the exclusion.

Finally, the Saouds appear to argue that, even if Everest had no duty to indemnify, it nonetheless had a duty to defend. How so? Because the duty to defend is broader than the duty to indemnify, *see Auto-Owners Ins. Co. v. City of Clare*, 521 N.W.2d 480, 487 (Mich. 1994), and, the Saouds claim, the allegations in the underlying lawsuits arguably came within the scope of the agreement. Indeed, the duty to defend is not "limited by the precise language of the pleadings" nor "limited to meritorious suits and may even extend to actions which are groundless, false, or

fraudulent, so long as the allegations against the insured even arguably come within the policy coverage." *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981).  So the Saouds say that Everest had to promptly defend them against the lawsuits even if the claims weren't ultimately covered by the policy.  We disagree.

The Saouds are right that the duty to defend applies where suits even arguably fall within the scope of the agreement.  But that is because, until there is "sufficient factual development," it will usually be difficult to "demonstrate[] that none of the claims fall within the policies."  *See S. Macomb Disposal Auth. v. Am. Ins. Co.*, 572 N.W.2d 686, 711 (Mich. Ct. App. 1997); *accord City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984).  For example, "[a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Detroit Edison*, 301 N.W.2d at 835.

But contrary to the Saouds' argument, "the duty to defend is not an unlimited one." *Meridian Mut. Ins. Co. v. Hunt*, 425 N.W.2d 111, 114 (Mich. Ct. App. 1988).  "The insurer is not required to defend against claims for damage expressly excluded from policy coverage."  *Id.*; *accord Consol. Med. Servs. v. Travelers Prop. Cas.*, No. 220846, 2001 WL 637447, at *2 (Mich. Ct. App. May 25, 2001).  In other words, there is no duty to defend if there is no duty to indemnify as a matter of law.  *Couch on Insurance* § 200:12 (3d ed.), Westlaw (database updated June 2022). Here, all the claims against the Saouds were premised on the same unregistered security.  So both the duty to defend and the duty to indemnify turn on whether the "Unregistered Security Exclusion" applies.  Because the exclusion applies, Everest had no duty to defend.

\* \* \*

We AFFIRM.