NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0226n.06

No. 22-1237

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | May 12, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| TORY ANDERSON, | ) |  |
| Defendant-Appellant. | ) | OPINION |
|  | ) |  |

Before: BOGGS, LARSEN, and NALBANDIAN, Circuit Judges.

BOGGS, Circuit Judge. In 2019, Tory Anderson pleaded guilty to sex trafficking of a minor, pursuant to a written plea agreement. At sentencing, his Guidelines range proved higher than he expected, so Anderson appealed. He challenges the district court's pretrial ruling that his text messages with the minor victim were admissible. Anderson also challenges aspects of his sentence, including the district court's decision to withhold a Guidelines offense-level reduction based on Anderson's acceptance of responsibility and its failure to account for Anderson's time served in detention. We affirm the district court's order.

## BACKGROUND

In July 2019, undercover FBI agents interviewed a woman, Adult Victim 1 (AV-1), who said that Tory Anderson had trafficked her for commercial sex. AV-1 had a tattoo on her neck that said "Tory," which AV-1 says Anderson forced his "girls" to get, as a way of branding them. AV-1 stated that Anderson was also trafficking a 17-year-old girl, Minor Victim 1 (MV-1), for

commercial sex. An online search found hundreds of commercial-sex advertisements showing photos of MV-1 and, in some photos, a "Tory" tattoo on the side of her face.

In September 2019, agents set up an undercover "date" with MV-1. An undercover officer texted the number in one of the advertisements and was directed to a room at a Super 8 Motel in Roseville, Michigan. Once the officer and MV-1 agreed on a price for a commercial sex act, FBI agents entered the hotel. The agents saw a man, later identified as Anderson, leave the motel and get into a car. Anderson backed into a parked FBI vehicle and was arrested. In his pocket, Anderson had key cards to MV-1's hotel room and over $1,500 in cash.

MV-1 consented to a search of her phone. Agents found over 7,000 text messages between her and Anderson. Most of the texts discussed arrangements for commercial sex, including updates on when a customer was arriving or leaving, or on how much a customer would pay. In several texts, Anderson acknowledged MV-1's age. MV-1 also sent nude pictures to Anderson.

Anderson was charged with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1). While awaiting trial, Anderson called MV-1 from jail and encouraged her not to cooperate with investigators. Anderson told MV-1 that "without my victim, they don't have no case." Anderson also promised to send money to MV-1 through his mother, and he asked her not to get a tattoo of another man's name.

In April 2021, Anderson moved the district court to revoke his pretrial detention order. In support, Anderson attached a notarized statement from MV-1, in which MV-1 said that she worked alone and that Anderson had never forced her to work for him or gotten money from her. The district court denied the motion and ordered Anderson's continued detention, concluding that Anderson's contact from jail with MV-1 cast doubt on MV-1's "purported recantation."

Before Anderson's trial, both parties moved in limine to exclude certain evidence. The government moved to exclude evidence pertaining to MV-1's identity and sexual history, exculpatory statements from Anderson's custodial interview, and arguments aimed at jury nullification. Anderson moved to exclude the text messages recovered from MV-1's phone.

The district court granted the government's motions and denied Anderson's motion. The district court held that the text messages were self-authenticating under Federal Rule of Evidence 902(14) because FBI agents followed the proper procedures to certify their authenticity. The district court also held that the texts were admissible without MV-1's testimony because the government could lay a foundation to admit the text messages by other means, such as the content of the messages themselves or the location of Anderson's and MV-1's phones when recovered.

The next day—the date set for the start of his trial—Anderson pleaded guilty based on a signed plea agreement. As part of the agreement, Anderson waived both the right to appeal his conviction and the right to appeal his sentence, provided that his sentence did not exceed the bottom of the Guidelines range determined by the district court. The government agreed to recommend a two-level Guidelines reduction for Anderson's acceptance of responsibility, under U.S.S.G. § 3E1.1(a), and to recommend that Anderson's sentence not exceed the bottom of his Guidelines range.

At Anderson's plea hearing, the parties anticipated that Anderson's Guidelines range would be 168 to 210 months. Noting the ten-year statutory minimum for Anderson's conviction and the terms of the plea agreement, the district court told Anderson that it would "probably be sentencing" him to "somewhere between 120 months and 168 months."

At Anderson's sentencing, his Guidelines range was determined to be 210 to 262 months. Neither party objected. The district court varied downward from the bottom of the Guidelines range and sentenced Anderson to 180 months of imprisonment.

On appeal, Anderson challenges the district court's ruling that the text messages were admissible without MV-1's testimony; its refusal to grant an additional one-level reduction for acceptance of responsibility; and its failure to impose a sentence with credit for time served. For the reasons below, we affirm the judgment of the district court in its entirety.

**I**

Anderson cannot appeal the district court's ruling on the admissibility of the texts recovered from MV-1's phone. After pleading guilty, Anderson "may not . . . raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). He "may challenge his waiver of appeal rights only 'on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel.'" *United States v. Presley*, 18 F.4th 899, 902 (6th Cir. 2021) (quoting *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017). Here, he did not.

Instead, Anderson tries to challenge a pretrial evidentiary ruling. He could assert that challenge only if he had entered a conditional guilty plea and reserved in writing the right to challenge specific rulings. *See United States v. Abdulmutallab*, 739 F.3d 891, 904–05 (6th Cir. 2014); Fed. R. Crim. P. 11(a)(2). He did not do that, either.

Anderson's guilty plea was not conditional. Nothing in his plea bargain preserved the right to challenge the evidentiary ruling. Although Anderson disputes the enforceability of his appeal waiver, he does not seek to withdraw his guilty plea, pursue an ineffective-assistance-of-counsel

claim, or suggest that his plea was involuntary. *See Tollett*, 411 U.S. at 267; *see also Presley*, 18 F.4th at 902. Therefore, Anderson cannot now appeal this pretrial ruling. *See United States v. Martin*, No. 21-1377, 2022 WL 13983460, at *3 (6th Cir. Oct. 24, 2022), *cert. denied*, 143 S. Ct. 536 (2022). Anderson concedes *Tollett*'s applicability but argues that we should reach his challenge nevertheless. We may not do so, because a guilty plea limits a defendant's right to appeal pretrial rulings even in the absence of an enforceable appeal waiver. *See Abdulmutallab*, 739 F.3d at 904.

Even if Anderson had not waived this particular challenge, the challenge lacks merit. Anderson does not contest the district court's holding that the government followed the proper procedure under Federal Rule of Evidence 902(14) to certify the text messages as self-authenticating. Rather, he argues that admission of the text messages violated his Sixth Amendment right to confront the witnesses against him. But the Confrontation Clause applies in this context only to testimonial evidence. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). The text messages are not testimonial because a reasonable person in MV-1's position would not have anticipated her texts being used against Anderson in a criminal prosecution. *See United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011). Anderson's focus on MV-1's notarized letter—a piece of evidence entirely separate from the text messages—is misplaced.

**II**

Anderson also challenges the district court's decision to withhold a third one-level reduction for Anderson's acceptance of responsibility. We typically review for clear error a district court's decision to deny an acceptance-of-responsibility reduction. *See United States v. McCloud*, 730 F.3d 600, 605 (6th Cir. 2013). The Guidelines permitted the district court to reduce Anderson's offense level by two levels if he "clearly demonstrates acceptance of responsibility for his offense."

U.S.S.G. § 3E1.1(a). Anderson may receive an additional one-level reduction only "upon motion of the government" stating that Anderson has "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." *Id.* § 3E1.1(b); *United States v. Smith*, 429 F.3d 620, 627–28 (6th Cir. 2005). The government's refusal to file a § 3E1.1(b) motion is limited only in that such a decision "cannot be based on a 'constitutionally impermissible factor' and cannot be arbitrary." *United States v. Collins*, 683 F.3d 697, 704–05 (6th Cir. 2012) (quoting *United States v. Coleman*, 627 F.3d 205, 215 (6th Cir. 2010)).

The government's decision not to move for a § 3E1.1(b) adjustment for Anderson was not arbitrary. At Anderson's plea hearing, the government stated that it would not request another one-level reduction because Anderson had not accepted responsibility in time for the government to avoid preparing for trial. Anderson pleaded guilty on the date set for the start of his trial, by which time the government was ready to proceed and potential jurors had arrived at the courthouse for jury selection. Anderson argues that the government acted arbitrarily because he pleaded guilty as soon as the district court ruled on the motions in limine. Anderson's calculated decision to wait until he knew the scope of evidence permitted at trial before pleading guilty does not render the government's own decision not to file a § 3E1.1(b) motion arbitrary. *See United States v. Rayyan*, 885 F.3d 436, 441 (6th Cir. 2018) (holding that a district court "did not abuse its discretion in permitting the government to withhold a [one-point reduction] recommendation" when "prosecutors [had already] expended resources researching and drafting a motion that they would not have drafted had [the defendant] notified them of his intent to plead guilty earlier"). Therefore, the district court did not clearly err in withholding a third one-level reduction for Anderson's acceptance of responsibility.

**III**

Finally, Anderson argues that he failed to receive credit for the 31 months he spent in custody before sentencing. Anderson is entitled to credit for time served before his sentencing, 18 U.S.C. § 3585(b), but it is the Attorney General, through the Bureau of Prisons, that computes such time—not the district court. *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993). Nor can we order such relief. To raise such a claim before us, Anderson must first exhaust his administrative remedies with the Bureau and then seek relief under 28 U.S.C. § 2241 in the judicial district where he is confined. 28 U.S.C. § 2241(d); *see Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (requiring a § 2241 petitioner to "file the petition in the district of confinement"); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006) ("Federal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241."). Anderson does not claim to have followed this process. Nor is he confined in a judicial district within this circuit. Therefore, we lack jurisdiction to review Anderson's claim to credit for time already served.

**CONCLUSION**

For the reasons above, we **AFFIRM** the district court's order.